# IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Curt M. WEBER, Attorney at Law.

Supreme Court

*No. 90–0294–D. Filed April 19, 1991.*

(Also reported in 468 N.W.2d 12.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

We review the recommendation of the referee that the license of Curt M. Weber to practice law in Wisconsin be suspended for a period of three years as discipline for professional misconduct. That misconduct consisted of his failure to perform services for which he had been retained by clients, misrepresenting to those clients what he had done on their behalf, continuing to practice law after the court suspended his license for misconduct and failing to cooperate in the investigation of the Board of Attorneys Professional Responsibility (Board) into his misconduct.

We determine that the three-year license suspension recommended by the referee is warranted as discipline for Attorney Weber's repeated breach of his professional duties to his clients, not only to perform those services for which he had been retained but also to keep them adequately informed of his actions taken on their behalf. Moreover, Attorney Weber breached his professional duty to cooperate with the court's disciplinary authority and, by continuing to practice law after his license was suspended, violated an order of this court. The seriousness of his misconduct and the fact that he had twice previously been disciplined for similar misconduct warrants the imposition of severe discipline.

Attorney Weber was admitted to practice law in Wisconsin in 1982 and practiced in Milwaukee. On November 13, 1989 the court suspended his license for 90 days as discipline for neglect of three client matters, dishonesty and misrepresentation in one of them and failure to cooperate in the Board's investigation. *Disciplinary Proceedings Against Weber,* 151 Wis. 2d 788, 446 N.W.2d 281 (1989). That suspension was continued and remains in effect as a result of Attorney Weber's having failed to close his office within the time period specified in the court's rule, SCR 22.26. Prior to that suspension, Attorney Weber received a private reprimand from the Board in 1985 for neglect of a client's legal matter and misrepresentation to the client. The referee in this proceeding is Attorney S. Michael Wilk.

Upon the parties' stipulation of facts, the referee made the following findings and conclusions.

1. In July, 1985, Attorney Weber was retained to pursue a worker's compensation claim arising from an alleged work-related injury. Prior to that retainer, the client had been told by the worker's compensation insurance carrier that her claim had been denied because it

was not related to a work-related condition. Attorney Weber told the client on several occasions about scheduled hearings on the claim but the client never attended and received no notices, documents or communications from Attorney Weber concerning them. Attorney Weber also failed to return numerous telephone calls she had made between October, 1988 and February, 1989, inquiring into the status of her claim.

After the client filed a grievance with the Board, the Board wrote to Attorney Weber asking for his response but Attorney Weber did not respond. After the Board sent a second letter, Attorney Weber asked the Board for additional time to reply to the grievance, stating that he was winding up his representation of the client, and he asked that his reply be deferred until completion of the worker's compensation case. When the Board responded that the matter would not be deferred, Attorney Weber did not respond to a subsequent letter from the Board asking for his response, nor did he appear at an investigative meeting scheduled before the Board.

After receiving notice of an adjourned investigative meeting, Attorney Weber told the Board that there had been no hearings on his client's claim and that he was settling the case without the necessity of a hearing. Shortly thereafter, Attorney Weber admitted that he had not filed a claim on behalf of his client, stating that he tried to settle the matter without making a formal claim and that he was pursuing the claim informally because the insurance carrier had told his client that the injury was not work-related. He admitted that he had misrepresented to the client that he would file a formal claim and that he had compounded that misrepresentation by failing to notify her of his failure to file that claim.

When Attorney Weber appeared before the Board later that month, he again admitted that he had misled

both the client and her husband into believing that he had filed a claim and that he had told the client that pretrial or preliminary hearing dates had been scheduled, when in fact they had not. He also admitted not working on the file between 1985 and April, 1989. Further, he admitted that he had not contacted the worker's compensation division or the employer's worker's compensation insurer. With respect to his prior representation to the Board that he was winding up his representation of the client and his request that his response be deferred until completion of the work on the claim, Attorney Weber said that his statement had been misleading in that the case was not in fact ready for settlement.

The referee concluded that Attorney Weber neglected this legal matter, in violation of SCR 20.32(3)[1] and 20:1.3;[2] his misrepresentation to his client concerning the status and progress of the claim constituted conduct involving deceit or misrepresentation, in violation of SCR 20.04(4)[3] and 20:8.4(c);[4] his misrepresentations to the Board during its investigation of this matter violated SCR 22.07(2)[5] and 20:8.1(a);[6] his failure to respond

---

[1]SCR 20.32 provides: "**Failing to act competently.** A lawyer may not: . . . (3) Neglect a legal matter entrusted to the lawyer."

[2]SCR 20:1.3 provides: "**Diligence** A lawyer shall act with reasonable diligence and promptness in representing a client."

[3]SCR 20.04(4) provided: "**Misconduct.** A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4]SCR 20:8.4 provides: "**Misconduct** It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5]SCR 22.07(2) provides:

> **Investigation.**
>
> . . .
>
> (2)   During the course of an investigation, the administrator or

to the Board's written requests for response to the grievance and his failure to appear before the Board constituted failure to cooperate, in violation of SCR 21.03(4)[7] and 22.07(2).

2. In November, 1987, a man retained Attorney Weber to represent him in a personal injury claim arising from an auto accident. Attorney Weber agreed to commence an action against the driver of the other vehicle and that driver's insurer in April, 1988. He subsequently told his client that the action was filed but that the trial date was postponed because other trials in the same court lasted longer than expected. At one point, he told the client that the insurer expected to obtain settlement authorization soon.

In April, 1989, Attorney Weber told his client that the trial was set for May 25, 1989, but early in the morning on that date he telephoned his client to state

a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

[6]SCR 20:8.1 provides:

**Bar admission and disciplinary matters**

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or . . ..

[7]SCR 21.03 provides: "**General principles.** . . . (4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator."

that the court ordered a postponement until June 9, 1989. On that date the client went to the courthouse and, when attempting to find which branch of the court was to hear the case, he found that there was not only no record of a hearing date but also no record of the action ever having been filed. The client met Attorney Weber as he was leaving the courthouse and told him what he had learned. In response, Attorney Weber told the client that the case had been filed and there must have been some mistake in the scheduling. He assured the client he would check into the matter and would telephone the client later that day, but he did not do so.

In June, 1989, the client contacted the insurer to learn the status of his claim and was told that the company was awaiting receipt of the client's medical records from Attorney Weber prior to making a settlement offer. He telephoned Attorney Weber with this information and was told that the case had been delayed because of the undue length of another trial in the same court and that a hearing on his claim was set for July 5, 1989.

Later that same month, the client notified Attorney Weber that he was terminating his services and asked for the return of his file. The client also filed a grievance with the Board concerning Attorney Weber's conduct in the matter. During its investigation, the Board discovered that Attorney Weber had no medical reports of the client. Attorney Weber told the Board he was negotiating with the insurer, specifying that he had sent a letter suggesting a $4,500 settlement. The Board requested a copy of that letter, as well as a copy of two letters Attorney Weber said he wrote to a clinic asking for his client's medical reports, but Attorney Weber did not produce them. Attorney Weber later admitted that he had never filed the action and that he had misrepresented the scheduling of it to his client.

The referee concluded that Attorney Weber neglected this client's legal matter, in violation of SCR 20:1.3, that his misrepresentations to his client constituted conduct involving deceit and misrepresentation, in violation of SCR 20:8.4(c), and that his failure to produce requested documents during the course of the Board's investigation constituted failure to cooperate with the Board, in violation of SCR 22.07(3).[8]

3. In April, 1988, a man retained Attorney Weber to represent him on a claim for unpaid wages and gave him $166 for payment of filing and service fees. Over the next several months, Attorney Weber told the client that he was in touch with the attorney for the client's former employer and was negotiating with him. In the spring of 1989, Attorney Weber told his client that the judge in the case had awarded him $1,000 in back salary and $1,000 in punitive damages, plus interest of $100. When the client received no further communication from Attorney Weber or any money, he telephoned Attorney Weber, who told him that the employer had not paid the judgment and that he was sending the sheriff to execute on it.

Soon thereafter, Attorney Weber told his client that he had received $250 from the former employer, which he would forward to him. When the client called two weeks later and said he had not received the money,

---

[8]SCR 22.07 provides:

**Investigation.**

. . .

(3)  The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

Attorney Weber insisted that he had mailed a registered letter to the client with a $250 check. The client contacted the postal service and learned that no registered letter had been sent. The client then went to see Attorney Weber, who told him he had received two $250 checks from the former employer, one of which he had previously mailed to the client, and he handed the purported second check to the client. The check was drawn on Attorney Weber's trust account. One week later, the client received a second check in the mail, which was postmarked after his meeting with Attorney Weber.

At that meeting, the client asked Attorney Weber to give him a copy of the pleadings and other documents in his case and Attorney Weber promised to mail that information to him but never did. Despite the client's continued calls during the summer of 1989, Attorney Weber never sent any additional monies to him, although he continued to report that he had done so by mail.

During the Board's investigation of this matter, Attorney Weber failed to respond to two letters of inquiry and failed to appear at an investigative meeting of the Board. He did, however, furnish a written reply, which included a purported copy of his entire file in the matter and, specifically, a draft of the complaint in the matter and correspondence reflecting his attempt to learn who the registered agent of the former employer was. In that communication, Attorney Weber admitted that he had not filed a complaint on behalf of his client and had misrepresented to his client that the action had been filed and that he recovered a $2,000 judgment. Attorney Weber also admitted that he did not know the identity of the former employer's attorney, had had no communication with that attorney and had not negotiated a settlement. He also admitted to having misrepre-

sented his attempt to have the sheriff execute on the purported judgment and that he had collected monies as a result of the action. He stated that the money he had paid the client came from his own funds. While he offered to pay the client $1,550 "to make him whole," he has never done so.

The referee concluded that Attorney Weber neglected this client's legal matter, in violation of SCR 20:1.3, that his misrepresentations constituted conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c), that his failure to timely respond to Board inquiries during its investigation and failure to appear at an investigative meeting violated SCR 21.03(4) and 22.07(2).

4. After this court suspended Attorney Weber's license to practice law, the telephone directory issued in November, 1989 contained an attorney listing for Attorney Weber. Further, Attorney Weber had entered into a rental agreement for an office in Elm Grove and permitted his being listed on the building directory as an attorney and displayed a sign next to the entrance to his suite indicating him as an attorney. Also, Attorney Weber's secretary-receptionist at his office answered the telephone "Curt Weber, Attorney at Law." At Attorney Weber's home, which had previously been his office location, the recorded message on the telephone answering machine identified the location as his law offices. The referee concluded that this conduct constituted failure to comply with this court's disciplinary suspension order and violated SCR 22.26.[9]

---

[9]SCR 22.26 provides:

**Activities on revocation or suspension of license.** (1)(a) A disbarred or suspended attorney on or before the effective date of disbarment or suspension shall:

1. Notify, by certified mail, all clients being represented in

5. In early 1990, a woman retained Attorney Weber to represent her in a divorce proceeding. Attorney Weber filed a summons and petition in that matter, together with a written property settlement the parties had signed. Throughout this period of time, Attorney Weber's license to practice law was suspended by order

pending matters of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension.

2. Advise the clients to seek legal advice of the client's own choice elsewhere.

(b) A disbarred or suspended attorney with a matter pending before a court or administrative agency shall promptly notify the court or administrative agency and the attorney for each party of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension. The notice must identify the successor attorney or, if there is none at the time of the notice, state the place of residence of the client of the disbarred or suspended attorney.

(2) A suspended or disbarred attorney may not engage in the practice of law or in any law work activity customarily done by law students, law clerks or other paralegal personnel, except that he or she may engage in law related work for a commercial employer not itself engaged in the practice of law.

(3) A suspended or disbarred attorney shall make within the first 15 days after the effective date of disbarment or suspension, all arrangements for the permanent or temporary closing of or winding up of the attorney's practice and may only aid in having others take over clients' work in process. If a suspended or disbarred attorney disappears or dies and the attorney has failed to comply with this subsection and no partner, personal representative or other responsible party capable of conducting the attorney's affairs is known to exist, a judge of a court of record in a county in which the attorney maintained an office shall appoint an attorney to enter the former offices of the disbarred or suspended attorney or other location as may be necessary for the sole purpose of protecting the client's rights, the clients' files and the clients' property, and the delivery thereof to the clients or their successor counsel. The appointed attorney may be compensated out of the assets of the suspended or disbarred attorney in the amount approved by the judge.

. . .

of this court and he did not inform his client of that fact. The referee concluded that Attorney Weber thereby violated SCR 22.26(2) and SCR 20:5.5(a).[10]

6. In October, 1988, a man retained Attorney Weber to represent him in a paternity proceeding and later asked him to represent him in an unrelated small claims action. After admitting paternity and having a judgment entered requiring him to pay child support, the client told Attorney Weber that the amount deducted from his paychecks exceeded the amount ordered by the court. Attorney Weber told him that he had prepared the necessary papers to correct the judgment and would have them delivered to the employer. Attorney Weber did not do so and the client obtained assistance from the district attorney office.

In the small claims action, the client's father had sued the client for failure to make payments on a promissory note. Attorney Weber made at least two court appearances in the matter and then told his client that he and his father should negotiate a settlement. Shortly thereafter, however, the client was notified that a default judgment had been entered against him for approximately $1,700. Attorney Weber failed to inform his client that the father's attorney had told him that the father would be satisfied with repayment of approximately $750 and that if payments on that amount were resumed, no further legal action would be taken.

The referee concluded that Attorney Weber's failure to file an amended order in the paternity proceeding, despite numerous requests from his client to do so, constituted failure to act with reasonable diligence and

[10]SCR 20:5.5 provides: "**Unauthorized practice of law** A lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or . . .."

promptness in representing a client, in violation of SCR 20:1.3, and that his statement to the client that no judgment had been entered in the small claims action and that a notice to that effect had been sent by mistake, knowing that such information was incorrect, constituted conduct involving misrepresentation, in violation of SCR 20:8.4(c).

7. In June, 1989, a man retained Attorney Weber to represent him in a claim for faulty repair work done on his automobile. When he retained Attorney Weber, the client had a small claims case pending against the company and it was agreed that Attorney Weber would attempt to negotiate a settlement prior to the hearing in that action. In the event negotiations were unsuccessful, Attorney Weber was to dismiss that action and commence a regular civil action.

Attorney Weber dismissed the small claims action but never commenced a regular civil action, although he had told the client on at least two occasions that he had done so. He had also told the client that the company had offered to take the car back for repairs but advised that the offer be rejected and that a regular action be commenced. When the client learned that no civil action had been filed, he told Attorney Weber, who responded that the court clerk was mistaken and that he would check into the matter. Attorney Weber then failed to return numerous telephone calls from the client inquiring into the status of the matter. Further, Attorney Weber never told his client that his license to practice law was suspended while he continued to represent him.

The referee concluded that Attorney Weber's failure to commence the civil action on behalf of his client constituted failure to act with reasonable diligence and promptness, in violation of SCR 20:1.3, that his statement to his client that he had filed the action consti-

tuted conduct involving deceit or misrepresentation, in violation of SCR 20:8.4(c), that his failure to notify his client of the disciplinary suspension and his resulting inability to represent him violated SCR 22.26(1), and that his engaging in the practice of law while his license was suspended violated SCR 22.26(2) and 20:5.5.

We adopt the referee's findings of fact and conclusions of law. The seriousness of Attorney Weber's misconduct detailed above, after he had been disciplined twice for similar misconduct, warrants the suspension of his license to practice law for three years, as the referee recommended.

IT IS ORDERED that the license of Curt M. Weber to practice law in Wisconsin is suspended for a period of three years, effective the date of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order Curt M. Weber pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Curt M. Weber to practice law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED that Curt M. Weber comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

LOUIS J. CECI, J. (dissenting). I dissent and would revoke the license of Mr. Curt M. Weber to practice law in Wisconsin.

On November 13, 1989, this court suspended Mr. Weber's license for 90 days as discipline for his neglect of three client matters, dishonesty and misrepresentations

in one of them, and failure to cooperate with the board's investigation. *Disciplinary Proceedings Against Weber,* 151 Wis. 2d 788, 446 N.W.2d 281 (1989). He had previously been the subject of a private reprimand from the board in 1985.

The majority sets forth in detail Mr. Weber's further violation of the Supreme Court Rules, including his failure to close his office within the time period specified in SCR 22.26. On the basis of the prior discipline imposed by this court on Mr. Weber for substantially similar professional misconduct and especially in light of his failure to cease practicing law once his license was suspended, I believe that the protection of the public demands that his license be revoked. Therefore, I dissent.